[Civ. No. 32646. Second Dist., Div. Four. July 14, 1969]

ROBERT PHIL WALKER, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

Murchison, Stebbins & Davis and Robert P. Stebbins for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Warren H. Deering and Henry G. Ullerich, Deputy Attorneys General, for Defendant and Respondent.

FILES, P. J.—Following an administrative hearing, appellant's license to operate a motor vehicle.was suspended under Vehicle Code ˙section 13353 upon the ground that he had refused to submit to a chemical test of the alcoholic content of his blood, breath or urine following his arrest for driving under the influence of intoxicating liquor. By a proceeding in mandate in the superior court he sought review of ˙that administrative decision. The superior court made findings adverse to appellant and denied him any relief. This appeal is from that judgment.

The facts pertinent to this opinion may be stated simply. Appellant was arrested by Highway Patrol officers while driving his automobile at 2:40 a.m. on May 11, 1967. An officer advised appellant of his "*Miranda* rights"[1] in this language (according to the officer's testimony at the administrative hearing) : "Mr. Walker, I'd like to advise you of your rights. You have a right to remain silent. That anything you say can and may be used against you in a court of law. In the event that you cannot afford an attorney, the State will provide one for you, and you are entitled to an attorney throughout the entire interview." Later, while appellant was being transported to the sheriff's station, the officer explained Vehicle Code section 13353 to appellant "in great detail," including the statement that he was required to submit to one of three tests, that is, of his blood, breath or urine, and that if he refused his driver's license would be suspended for a period

---

[1]See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

of six months.[2] Appellant said he would take the breath test. On arrival at the station appellant said he would not take the test until he talked to his attorney. The officers allowed him to place two telephone calls for that purpose, but appellant was unable to reach the party he was calling.[3] Following the telephone calls the officers ''again re-advised him of the Implied Consent Law''[4] and asked him if he would take a chemical test. Appellant again stated '' 'I won't do anything 'till I see my attorney.' ''

The officers took this as a final refusal, and subsequently instituted the statutory procedure which resulted in a formal hearing before a two-man board, where appellant appeared with counsel and evidence was taken. From the evidence the board found that appellant had been arrested, that the officer had reasonable cause to believe he had been driving under the influence of intoxicating liquor, that he had been told that his driving privilege would be suspended for six months if he refused to submit to a chemical test, and that he had refused. Upon these findings the Department of Motor Vehicles suspended appellant's driving privilege for six months.

The superior court heard the case upon the record of the administrative hearing, but exercised an independent judgment on the facts and made its own findings of fact as it was required to do. (See *Hohreiter* v. *Garrison* (1947) 81 Cal.App. 2d 384, 401-402 [184 P.2d 323], applied to this type of proceeding in *Finley* v. *Orr* (1968) 262 Cal.App.2d 656, 666 [69 Cal.Rptr. 137].)

The superior court's findings included all of the facts found by the hearing board, together with a number of more detailed findings which were requested by appellant as a foundation for some contentions which his counsel desired to urge on appeal.

Appellant's brief challenges on a variety of grounds the constitutionality of Vehicle Code section 13353 and the legality of the procedures employed by the Department of

---

[2]Vehicle Code section 13353 provides that a person lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor ''shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months. The person arrested shall have the choice of whether the test shall be of his blood, breath or urine.''

[3]This is the officer's testimony. Appellant testified he was allowed only to telephone his wife.

[4]This is the officer's testimony. The words he used in speaking to appellant are not in the record.

Motor Vehicles, but cases decided subsequently have established the law against him on these points.

■ The procedure required by section 13353 is consistent with due process; and the requirement that a driver submit to a chemical test does not violate his constitutional privilege against self-crimination. (*Finley* v. *Orr, supra,* 262 Cal.App. 2d 656, 660.)

It is not necessary that the hearing officer be an attorney, and the provisions of the Administrative Procedure Act (Gov. Code, § 11500 et seq.) are inapplicable. (*Serenko* v. *Bright* (1968) 263 Cal.App.2d 682, 689 [70 Cal.Rptr. 1].)

We find no basis for appellant's contention that he is denied "equal protection of the laws" in that the license suspension is automatic for the driver who refuses the test but discretionary for the driver who takes the test and is found to be under the influence of alcohol (Veh. Code, § 13210).

The Legislature had a sufficient reason for requiring a chemical test, and for providing a simple administrative sanction to enforce that requirement. The combination of criminal punishment and administrative sanctions which are imposed upon a person convicted of drunk driving (see Veh. Code, §§ 23102, 13210, 13352) serve a different purpose and, in a particular case, may be more or less onerous than the sanction imposed under section 13353.

The classes are different. All who refuse the chemical test are subject to the sanction of section 13353, and all who drive under the influence are subject to the penalties provided for that offense. A driver may fall into either class, or neither or both, and will receive the treatment which the law provides for the class or classes in which he places himself. (See *August* v. *Department of Motor Vehicles* (1968) 264 Cal.App. 2d 52, 67 [70 Cal.Rptr. 172].)

■ More detailed discussion is required for appellant's contention that he did not actually refuse to take the test when he said he would do nothing until he talked to an attorney. Put differently, appellant's point is that the "*Miranda* warning," which advised him of his right to counsel during police interrogation, led him to believe he was entitled to counsel before or during the test, and that belief cancelled the effect of the statutory admonition (see fn. 2, *ante,* p. 795) that a refusal to submit to the test would result in suspension of the license. For this, he relies on the reasoning of *Rust* v. *Department of Motor Vehicles* (1968) 267 Cal.App.2d 545 [73 Cal.

Rptr. 366], decided November 21, 1968, after this appeal was taken.

A number of cases have held that the arrested person is not entitled to consult counsel before submitting to one of the tests, and his statement that he will consent only after such consultation is a refusal under the statute. (See *Finley* v. *Orr, supra,* 262 Cal.App.2d 656, 660, 663; *Ent* v. *Department of Motor Vehicles* (1968) 265 Cal.App.2d 936, 938 [71 Cal. Rptr. 726].) The latter opinion points out (at p. 940) that the probative value of a chemical test for intoxication diminishes with the passage of time, so that a delay for the time necessary to locate a lawyer could operate to prevent any meaningful testing.

In *Rust* v. *Department of Motor Vehicles, supra,* 267 Cal. App.2d 545, the officers had advised the driver of his right to an attorney, then requested that he submit to a chemical test and warned that if he refused his driving privilege would be suspended. The driver replied that he refused until he called his attorney. The trial court found that the driver's statement, under the circumstances, did not constitute a refusal. In affirming, the Court of Appeal pointed out that the driver may have been confused by the two admonitions, and suggested that the officer ought to qualify his advice by explaining that the right to counsel is inapplicable to the chemical test.

In *Kingston* v. *Department of Motor Vehicles* (1969) 271 Cal.App.2d 549 [76 Cal.Rptr. 614] the record showed the *Miranda* warning and the officer's demand for a chemical test followed by the driver's statement ''I want to see my attorney,'' which the officer construed as a refusal. The trial court dismissed the driver's petition for a writ of mandate without a hearing. The Court of Appeal reversed upon the ground that the driver was entitled to a hearing in court on the question whether he had misinterpreted the *Miranda* warning.

In *Wethern* v. *Orr* (1969) 271 Cal.App.2d 813 [76 Cal. Rptr. 807] the driver was given the *Miranda* warning at the scene of the arrest. He said he wanted to consult an attorney and was told he could do so after he was booked. At the sheriff's station, prior to booking, the officers requested that he take a test. He replied that he refused and he wanted a lawyer. The trial court reviewed the administrative record and upheld the decision of the Department of Motor Vehicles suspending the license. The Court of Appeal reversed upon the ground that the refusal ''may well have resulted'' from

the officer's explanation, and hence was "not the refusal contemplated by the code section."

In *Farrington* v. *Department of Motor Vehicles* (1969) 272 Cal.App.2d 330 [77 Cal.Rptr. 388] the superior court found that the driver had not refused the test and ordered the department to vacate its order suspending the license. The Court of Appeal held the evidence did not support that finding. The opinion points out that the trial had occurred prior to the *Rust* decision, and it was possible that had the more recent opinions been available, the hearing officer would have allowed evidence that "there was a misconception, a confusion or misinterpretation by petitioner between the *Miranda* warning and the advisement regarding the taking of a chemical test." (272 Cal.App.2d at p. 335.) The judgment was reversed with instructions to remand the matter to the department for further proceedings.

In the case at bench the record shows that at the superior court trial conducted October 13, 1967, which was prior to any of the appellate court decisions cited above on this problem, the superior court did consider whether appellant had been confused and misled by the *Miranda* warning. In summing up its views of the case and the arguments of counsel, the court commented upon the distinction between the right to counsel during police interrogation, as established in *Miranda,* and the absence of any right to counsel as a condition precedent to a chemical test. The court added: "So I can conceive of cases under evidence somewhat different than this where the giving of the 'Miranda' warning might excuse what otherwise would be a refusal. But I don't find it here. Beyond that I think that the preponderance of the evidence establishes a refusal."

The point was again referred to during the hearing held to settle the findings. Appellant made a written request for an express finding that the arresting officers told him he "was entitled to an attorney throughout the entire interview" and that the arresting officers did not properly explain appellant's rights in the manner required by section 13353 "as opposed to [appellant's] rights against self-incrimination." After hearing argument the court said: "It strikes me that the significance of the warning is twofold; one, a potential issue as to whether the warning must be given prior to the time that the chemical test is administered, or conceivably, I suppose, prior to the time that the field sobriety test is given, on both of which issues I think I have expressed myself as saying that under the cases it doesn't appear to me that such a warning is

required. The second issue goes to whether there has, in fact, been a refusal. We are going to see that later in another case, I think. So the ultimate fact for the purpose of findings is that there either was a refusal or there wasn't a refusal, and that anything else is simply background evidence.''

The findings, as settled by the court, state that appellant ''was then advised of his constitutional rights''; he was advised ''that he was required to submit to a chemical test of his blood, breath or urine and that a failure to submit to such a test will result in the suspension of his privilege to operate a motor vehicle for a period of six months''; that he first consented to a breath test and then ''refused to take all tests.''

Vehicle Code section 13353 specifically provides that the arrested person shall be told that his failure to submit to a test will result in a suspension. It also provides that if he refuses the department shall suspend the driving privilege. It is a question of fact whether the driver was given the statutory advice, and whether he refused the test. If the evidence shows the officer made ambiguous or conflicting statements, that evidence has a bearing on whether the advice conformed substantially to the statutory requirement, and whether the response of the driver indicated his confusion rather than his refusal to perform a statutory duty.

There is no basis for the contention that the juxtaposition of the *Miranda* warning and the statutory demand for a test vitiates the latter as a matter of law. The statement of the officer that ''you are entitled to an attorney throughout the entire interview'' is not literally · inconsistent with the requirement that he take a blood, breath or urine test without waiting for the attorney. Although the *Rust* opinion advises officers to tell the arrestee that the right to counsel does not apply to the chemical test, it does not create a new nonstatutory condition precedent to the application of section 13353.

In the *Kingston* case, *supra* (271 Cal.App.2d 549), reversal was required because the superior court had failed to make any findings of fact. In the *Farrington* case, *supra,*(272 Cal. App.2d 330), the judgment in favor of the driver was reversed for insufficiency of the evidence to support the theory upon which the court had relied. The opinion points out that evidence of the driver's confusion could be considered at a new hearing.

Only in *Wethern* v. *Orr, supra,* 271 Cal.App.2d 813, did the appellate court determine, contrary to the trial court's finding, that the driver had not refused, within the mean-

ing of the statute, when he demanded counsel. If the *Wethern* case is read as holding that, as a matter of law, the *Miranda* warning excuses the driver's refusal to take the chemical test, it is inconsistent with the holdings in *Farrington* and *Kingston*. In each of those cases the appellate court refrained from deciding that the driver was excused as a matter of law, and sent the case back for trial of the issue of fact.

In the case at bench appellant was allowed to make telephone calls and, when he was unable to reach the person he called, the officers again requested that he take the test, and he again failed to do so. At the administrative hearing appellant testified to his version of the conversation with the officers, but he did not say he believed the officers were offering him the option of postponing the test until he could talk to his attorney. Although the trial in this case occurred prior to the *Rust* decision, counsel and the trial judge had in mind the factual issue to be decided, and it was decided, upon substantial evidence. Nothing further is required.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.